UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SCOTT K. ASAY and SHERI L. ASAY, | ) |
| Plaintiffs, | ) 2:08-CV-01242-LRH-PAL |
| v. | ) |
| | ) ORDER |
| KOLBERG-PIONEER; KPI-JCI ASTEC COMPANIES; ASTEC INDUSTRIES; GOODFELLOW CORP; TK ELECTRIC, INC.; and Does 1 through 20 and ROE Corporations 20 through 40 inclusive, | ) |
| Defendants. | ) |

Before the court is Defendant Astec Industries, Inc.'s ("Astec") Motion for Summary Judgment (#43[1]), filed on behalf of itself and Defendant KPI-JCI Astec Companies ("KPI-JCI"). Also before the court is Defendant Kolberg-Pioneer, Inc.'s ("KPI") Motion for Summary Judgment (#45). Plaintiffs Scott K. Asay ("Asay") and Sheri L. Asay (collectively "Plaintiffs") have filed oppositions (##47, 48) to which Astec (#49) and KPI (#50) replied.

**I.   Facts and Procedural History**

This is a product liability dispute arising out of the use of a stacking conveyor. Astec, a publicly traded company, owns all of the stock in a number of subsidiary companies, including

---

[1]Refers to the court's docket entry number.

1  KPI. KPI designs, manufactures, markets, sells, and services stacking conveyors, including the
2  machine at issue in this case.

3  Asay worked for Rinker Materials at a quarry operation in Moapa, Nevada. On September
4  22, 2005, an unrelated piece of machinery, located atop the subject stacking conveyor, jammed.
5  Asay agreed to climb to the top of the stacking conveyor to fix the problem. Before climbing,
6  Asay did not lock out the machine's power source. When a co-worker turned on the stacking
7  conveyor, Asay was thrust from the top of the machine and suffered numerous injuries.

8  On September 19, 2007, Plaintiffs filed this lawsuit alleging two causes of action: (1)
9  products liability; and (2) strict products liability. On February 16, 2010, following the completion
10 of discovery, Astec and KPI moved for summary judgment.

11 **II.    Legal Standard**

12 Summary judgment is appropriate only when "the pleadings, the discovery and disclosure
13 materials on file, and any affidavits show that there is no genuine issue as to any material fact and
14 that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. In assessing a
15 motion for summary judgment, the evidence, together with all inferences that can reasonably be
16 drawn therefrom, must be read in the light most favorable to the party opposing the motion.
17 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne*
18 *v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

19 The moving party bears the burden of informing the court of the basis for its motion, along
20 with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,
21 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party
22 must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could
23 find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.
24 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001). For
25 those issues where the moving party will not bear the burden of proof at trial, the moving party
26

2

1 must point out to the court "that there is an absence of evidence to support the nonmoving party's
2 case." *Catrett,* 477 U.S. at 325.

3       To successfully rebut a motion for summary judgment, the non-moving party must point to
4 facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*
5 *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might
6 affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
7 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary
8 judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute
9 regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could
10 return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of
11 a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a
12 genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.
13 *See id.* at 252.

14 **III.  Discussion**

15       Astec moves for summary judgment on the following grounds: (1) KPI-JCI is a non-
16 existent entity and, thus, cannot be liable for any torts; and (2) Astec was not responsible for the
17 sale or manufacture of the product. KPI argues that summary judgment is appropriate because no
18 genuine issues of material fact remain concerning Plaintiffs' products liability and strict products
19 liability claims.

20       **A.  Defendant KPI-JCI**

21       Astec presents evidence, in the form of an affidavit, that KPI-JCI is a "non-existent entity."[2]
22 (Defs.' Mot. Summ. J. (#43), Ex. A at 3.) Consequently, KPI-JCI could not have designed,
23 manufactured, processed, marketed, sold, shipped, or serviced the stacking conveyor. Plaintiffs do

---

[2] Astec does not explain the meaning of the term "non-existent entity." The court assumes that KPI-JCI is not a corporation subject to this court's jurisdiction. Nevertheless, Plaintiffs do not address this issue in their opposition.

3

1 not challenge this evidence in their opposition. Accordingly, summary judgment in favor of KPI-
2 JCI is appropriate.

### B. Defendant Astec

Astec and Plaintiffs agree that Astec is the parent company of KPI.[3] "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citations omitted). Nevertheless, "the corporate veil may be pierced and the shareholder liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes." *Id*. at 62 (citations omitted). Under Nevada law, the corporate veil may be pierced when: (1) the corporation is influenced and governed by the stockholder asserted to be its alter ego; (2) there is such unity of interest and ownership that the corporation and the stockholder are inseparable from each other; and (3) adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice. *Basic Mgmt. Inc. v. United States*, 569 F. Supp. 2d 1106, 1117 (D. Nev. 2008) (citing Nev. Rev. Stat. § 78.747).

Here, no evidence in the record suggest that Astec interfered in the day-to-day activities of KPI. Further, Astec did not "design, manufacture, process, market, offer to sell, sell, ship or service the product" nor did it "provide oversight or advice to anyone in connection with that product." (Smith Aff. (#43) ¶ 6.) Plaintiffs do not provide evidence suggesting that Astec sold or manufactured the stacking conveyor, that Astec misused its position as a shareholder to accomplish any wrongful purposes, that Astec influenced or governed KPI, or that Astec and KPI are inseparable from each other. Accordingly, Plaintiffs have not provided any evidence that would

---

[3] Accordingly, Plaintiffs' reliance on the "mere continuation" exception is misplaced. The "mere continuation" exception applies to successor-predecessor corporate relationships, rather than parent-subsidiary relationships. *See Roll v. Tracor, Inc.*, 140 F. Supp. 2d 1073 (D. Nev. 2001). Plaintiffs have not established that Astec succeeded KPI as a corporate entity.

4

1 permit the court to pierce the corporate veil. Because Astec did not manufacture or sell the
2 stacking conveyor at issue and because Astec is not liable for the acts of KPI, summary judgment
3 in favor of Astec is appropriate.

**C.     "Products Liability"**

Plaintiffs' first claim for relief is entitled "products liability." There is no "products liability" cause of action in the State of Nevada. "If liability is to be placed upon . . . the manufacturer, it must rest upon (a) his negligence, or (b) upon a declared public policy that one who sells a product in a condition dangerous for use shall be strictly liable to its ultimate user for injuries resulting from such use . . . ." *Long v. Flanagan Warehouse Co.*, 382 P.2d 399, 403 (Nev. 1963); *see also Chavez v. Robberson Steel Co.*, 584 P.2d 159, 160 (Nev. 1978) (noting that the different theories of product liability are express or implied warranty, negligence, or strict liability in tort) (citation omitted).

Although Plaintiffs use the title "products liability" for their first cause of action, Plaintiffs have asserted a negligence claim. Plaintiffs argue that "Defendants negligently designed, manufactured, sold, distributed, installed, and maintained the subject machinery." (Pls.' First Am. Compl. (#13) ¶ 10.)

"A claim for negligence in Nevada requires that the plaintiff satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't, LLC.,* 180 P.3d 1172, 1175 (Nev. 2008) (citation omitted). Although Plaintiffs argue that KPI failed to manufacture the conveyor in a reasonably safe condition, Plaintiffs have not provided evidence addressing the element of legal causation. "Proximate cause, or legal cause, consists of two components: cause in fact and foreseeability." *Doud v. Las Vegas Hilton Corp.*, 864 P.2d 796, 801 (Nev. 1993) (citation omitted). Cause in fact requires a showing that the defendant's negligence was a "substantial factor" in bringing about plaintiff's injury. *Id.* Foreseeability is a "policy concern" that limits defendant's liability to only those harms with a reasonably close

5

connection to its breach. *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 724 (Nev. 2009).

To prove causation, Plaintiffs point to KPI President Joe Vig's deposition testimony in which he speculates whether an emergency pull cord would have prevented the accident. Vig testified that a pull cord "would stop the motor if it operates properly," but he could not say whether a pull cord would prevent a person from being thrown over the edge of the conveyor. (Pls.' Opp'n Mot. Summ. J. (#47), Ex. 13 at 38.) When viewing the evidence in the manner most favorable to Plaintiffs, Plaintiffs have not presented any evidence showing that Astec's allegedly negligent failure to provide a pull cord was a "substantial factor" in bringing about Asay's injury. Instead, Plaintiffs have only provided speculative testimony concerning a pull cord's ability to keep an individual on top of a stacking conveyor. Accordingly, the court will grant summary judgment

### D.  Strict Products Liability

Plaintiffs' second claim for relief is under strict products liability. To establish strict products liability, Plaintiffs must demonstrate the following: (1) the product had a defect which rendered it unreasonably dangerous: (2) the defect existed at the time the product left the manufacturer; and (3) the defect caused the plaintiff's injury. *Fyssakis v. Knight Equipment Corp.*, 826 P.2d 570, 571 (Nev. 1992) (citations omitted). Plaintiffs allege that KPI is strictly liable for the following: (1) the defective design of the stacking conveyor; and (2) the failure to warn about the dangers associated with using the stacking conveyor.

#### 1.  Defective Design

Plaintiffs argue that the conveyor was defective because (1) it did not have an electrical disconnect mounted on its frame; (2) it did not have an emergency pull cord that would have cut off electrical power to the conveyor; and (3) it did not have safety equipment that would allow a worker to safely climb the conveyor.

///

### a. Electrical Disconnect

Mine Safety and Health Administration regulations require individuals to de-energize electrical equipment and lock out all power switches before performing maintenance. 30 C.F.R. § 56.12016 (2005). The KPI stacking conveyor did not have an electrical disconnect mounted directly on the machine. The record does indicate, however, that power to the stacking conveyor could have been disconnected at the power source. Plaintiffs argue that the lack of an electrical disconnect on the stacking conveyor was an unreasonably dangerous product defect.

Generally, "[t]hose products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function." *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138 (Nev. 1970) (citation omitted). However, "[t]he lack of adequate safety features or the feasibility of a safer alternative design" can create an unreasonably dangerous defect. *Rowell v. Powerscreen Int'l, Ltd.*, 808 F. Supp. 1459, 1462 (D. Nev. 1992) (citation omitted). "A manufacturer may be liable for failure to provide a safety device if the inclusion of the device is commercially feasible, will not affect product efficiency, and is within the state of the art at the time the product was placed in the stream of commerce." *Robinson v. G.G.C., Inc.*, 808 P.2d 522, 524 (Nev. 1991) (citation omitted).

Plaintiffs have presented evidence suggesting that the inclusion of the device would be commercially feasible. While the cost of a new conveyor is approximately $60,000, an electrical disconnect would only cost between $20 and $200. (Pls.' Opp'n Mot. Summ. J. (#47) Ex. 4 at 72, 111.) Plaintiffs have also presented evidence that mounting an electrical disconnect on the conveyor was within the state of the art by demonstrating that KPI and other companies have placed electrical disconnects on other machines. (Pls.' Opp'n Mot. Summ. J. (#47) 15.) Accordingly, it remains a question of fact whether the lack of an electrical disconnect on the machine was an unreasonably dangerous defect.

Plaintiffs have failed to establish, however, that this alleged defect caused Mr. Asay's

1 injuries. Under strict liability, plaintiffs must demonstrate causation. *Price v. Blaine Kern Artista,*
2 *Inc.*, 893 P.2d 367, 369 (Nev. 1995) (citation omitted). "[T]he plaintiff must show that the design
3 defect in the product was a substantial factor in causing his injury." *Id.* at 370 (citation omitted).
4 "[I]f a tortfeasor inflicts injuries on a plaintiff that are identical to what the plaintiff would have
5 received notwithstanding some abstract defect in the involved product, the manufacturer may be
6 absolved of liability . . . ." *Id.*

7 KPI argues that "there is no evidence that the lack of a disconnect box mounted on the
8 conveyor - which would have been simply another location to lock out power to the conveyor -
9 caused [Asay's] accident." (Pls.' Mot. Summ. J. (#46) 23.) Plaintiffs have not provided any
10 evidence demonstrating that the lack of an electrical disconnect on the conveyor was a substantial
11 factor in causing Asay's injuries. Although proximate causation is generally an issue of fact for
12 the jury, here, Plaintiffs have not shown that they can produce any evidence at trial to support this
13 element of their claim. Accordingly, summary judgment for KPI is appropriate for this issue.

### b. Emergency Pull Cord

15 In their opposition, Plaintiffs claim that because the conveyor lacked an emergency pull
16 cord that could have cut off power, the machine was defective when it left KPI's control. Plaintiffs
17 demonstrate that the stacking conveyor did not have an emergency pull cord, that KPI provides
18 emergency pull cords on some conveyors, and that nothing physically prevents the installation of
19 emergency pull cords on conveyors.

20 Plaintiffs have failed, however, to present evidence indicating that the lack of this pull cord
21 caused the accident. As noted above, Plaintiffs rely on KPI President Joe Vig's deposition
22 testimony in which he testified that a pull cord "would stop the motor if it operates properly" but
23 he could not say whether a pull cord would prevent a person from being thrown over the edge of
24 the conveyor. (Pls.' Opp'n Mot. Summ. J. (#47), Ex. 13 at 38.) As such, Plaintiffs have not
25 presented any evidence indicating that the lack of the emergency pull cord was a substantial factor

8

1  in Asay's injuries.  Accordingly, the court will grant summary judgment for KPI on this issue.

2          **c.**  **Safety Equipment**

3    Plaintiffs also argue in their opposition that the conveyor lacked "steel poles welded or
4  bolted to the conveyor with a wire rope running through the poles, through which a worker could
5  tie off with a lanyard or harness while walking and working on the conveyor." (Pls.' Opp'n Mot.
6  Summ. J. (#47) 15.)  To support this claim, Plaintiffs rely solely on deposition testimony from
7  Dave Chavez, Director of Health and Safety and Labor Relations for Rinker Materials.  Chavez
8  testified that while there was no mechanism for tying off while walking up the conveyor,  "once
9  [Asay] got to the top of the conveyor belt, he could have tied off somewhere." (Pls.' Opp'n Mot.
10  Summ. J. (#47), Ex. 11 at 83.)   Because Asay's injury occurred while he was already atop the
11  conveyor, Plaintiffs have failed to provide evidence suggesting that the lack of this particular
12  safety equipment was a substantial factor in causing Asay's injuries.  Accordingly, summary
13  judgment for KPI with respect to this claim is appropriate.

14         **2.**  **Failure to Warn**

15    Plaintiffs allege that KPI failed to provide adequate warnings.  "A product may be found
16  unreasonably dangerous and defective if the manufacturer failed to provide an adequate warning."
17  *Rivera v. Philip Morris*, 209 P.3d 271, 275 (Nev. 2009).  Under Nevada law, "strict liability may
18  be imposed even though the product is faultlessly made if it was unreasonably dangerous to place
19  the product in the hands of the consumer without suitable and adequate warning concerning safe
20  and proper use." *Lewis v. Sea Ray Boats, Inc.*, 65 P.3d 245, 249 (Nev. 2003).

21    Nevertheless, a manufacturer is not required to warn against harms that are generally
22  known. *Id.* (citation omitted).  KPI argues that it is "not required to warn users of its equipment
23  against the obvious danger of walking on the belt of a 100-foot-long, inclined conveyor." (Defs.'
24  Reply (#50) 12.)  Because this argument was raised in Defendant's reply, rather than in the motion
25  for summary judgment, Plaintiffs were not given an opportunity to respond to this allegation.

26                   9

Accordingly, Defendant has not yet demonstrated that there is an absence of evidence to support Plaintiffs' claim that a warning was needed.

It remains a question of fact whether KPI affixed any warnings to the subject stacking conveyor. KPI's Technical Publications Manager, Tim Bohn, testified that warning decals were normally placed on a specific location on stacking conveyors. However, Rinker Materials employee Dave Chavez testified that he did not see any warning decals when he investigated the accident on behalf of Rinker. Accordingly, the existence of any warnings remains an issue of fact for the jury to resolve.

Further, it also remains an issue of fact whether any such warnings were adequate. Warnings must "adequately communicate any dangers that may flow from the use or foreseeable misuse of a product." *Yamaha Motor Co., USA*, 955 P.2d at 665 (citation omitted). KPI allegedly failed to warn against walking on a conveyor. It remains a question of fact whether walking on the stacking conveyor was a foreseeable misuse that necessitated a warning communicating the dangers associated with such an activity. As such, summary judgment is not appropriate for this issue.

### 3. Assumption of the Risk

Assumption of the risk is a defense to strict products liability. *Cent. Tel. Co. v. Fixtures Mfg. Corp.*, 738 P.2d 510, 512 (Nev. 1987) (per curiam) (citations omitted). A defendant "must show (1) that the plaintiff actually knew and appreciated the risk or danger created by the defect, (2) that the plaintiff voluntarily encountered the risk while realizing the danger, and (3) that the plaintiff's decision to voluntarily encounter the known risk was unreasonable." *Id.* (citation omitted).

While Asay testified that he "volunteered" to climb atop the stacking conveyor to repair the clogged feeder box, Asay also testified that the only other worker on site capable of fixing the problem was a seventy year old man with leg problems. (Pls.' Opp'n Mot. Summ. J. (#47), Ex. 1

10

at 32, 62.) As such, whether Asay voluntarily assumed the risk remains a question of fact for the jury to decide.

### 4. Unforeseeable Misuse

A plaintiff's misuse of a product, which is not reasonably foreseeable, is also a defense to strict products liability. *Crown Controls Corp. v. Corrella*, 639 P.2d 555, 557 (Nev. 1982) (per curiam). Nevertheless, "use of a product that the manufacturer should reasonably anticipate is not misuse or abuse." *Id*. (citation omitted).

The evidence surrounding the foreseeability of a worker walking on a stacking conveyor is conflicted. An employee of KPI testified that he had actually seen individuals walking on conveyors. (Pls.' Opp'n Mot. Summ. J. (#47), Ex. 9 at 47.) Further, Plaintiffs' expert, Frank Perez, Ph.D., testified that he believes walking on a conveyor to be a "foreseeable misuse." (Pls.' Opp'n Mot. Summ. J. (#47), Ex. 10 at 18). On the other hand, KPI President Joe Vig testified that he did not believe it to be "reasonably foreseeable" that someone would walk on a conveyor. (Def.'s Reply Mot. Summ. J. (#50), Ex. 3 at 83.) As such, it remains in dispute whether walking on a conveyor is a reasonably foreseeable misuse, and the court will not grant summary judgment on this issue.

IT IS THEREFORE ORDERED that Defendants Astec and KPI-JCI's Motion for Summary Judgment (#43) is GRANTED.

IT IS FURTHER ORDERED that Defendant KPI's Motion for Summary Judgment (#45) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 13th day of August, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

11